IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| LARRY D. MOORE, | * | CHAPTER 13 |
|     Debtor | * | |
| | * | CASE NO. 1:14-bk-03779-MDF |
| LARRY D. MOORE, | * | |
|     Plaintiff | * | |
| | * | |
| v. | * | |
| | * | |
| AMERICAN EXPRESS BANK, FSB, | * | |
|     Defendant | * | |

## OPINION

Before me is a motion filed by American Express Bank, FSB ("AMEX") requesting that I reconsider two orders sustaining the objections of Larry D. Moore ("Debtor") to proofs of claim AMEX filed in the above-captioned bankruptcy case. I previously granted the motion for reconsideration, and for the reasons that follow, Debtor's objections will be sustained in part and overruled in part.

### I. Procedural History

On August 15, 2015, Debtor filed his Chapter 13 bankruptcy petition. A few months before his individual petition was filed, Debtor filed a Chapter 7 petition for Lewistown Health and Fitness Center, Inc. ("Lewistown Center") in his capacity as president of the corporation. On September 23, 2014, AMEX filed a proof of claim in Debtor's case (Claim #3) in the amount of $24,699.39 for pre-petition charges on an account referred to as the "Business Capital Line of Credit Account" (the "LOC Account"). On December 3, 2014, AMEX filed a proof of claim (Claim #9) in the amount of $4,174.06 for pre-petition charges incurred on an account referred to as the "Blue for Business" Account (the "Blue Account").

Debtor filed objections to both claims asserting that he was not personally liable for the debts, which he stated were incurred for the benefit of Lewistown Center. AMEX responded to the objections, and a hearing was scheduled for June 24, 2015. When Debtor's counsel failed to appear at the hearing, the matter was continued to July 15, 2015. Before the continued hearing date, Debtor filed amended objections to Claims #3 and #9, respectively. The amendments averred that Debtor was not personally liable for the debts and that AMEX had not provided sufficient documentation to support its claims. AMEX responded, and on August 26, 2015, a hearing was held on the amended objections. After hearing the arguments of counsel, I sustained Debtor's objections because I determined that the proofs of claim filed did not constitute prima facie evidence of the validity and amount of the claims and that AMEX failed to prove that its claims were enforceable against Debtor personally.[1] Further, even if I were to find that Debtor was personally liable on the accounts, the documents only established Debtor's liability for obligations incurred after June 2011. Debtor provided unrebutted testimony that he made no charges on the accounts after that date.

On September 10, 2015, AMEX filed a motion for reconsideration of the orders sustaining Debtor's objections on the grounds that Debtor initially listed the debts as undisputed on his schedules and acknowledged his liability on the debts as a "co-debtor." AMEX further alleged that Debtor testified falsely at the prior hearing when he stated that no charges had been made on the accounts after June 2011. AMEX attached documents purporting to show that

---

[1]Under Rule 3001(c)(3), when a creditor files a claim based on open-end or revolving *consumer* credit agreements, the creditor does not need to attach the writing, as required under (c)(1), in order for the claim to constitute prima facie evidence of the validity and amount of the claim unless the writing is requested by a party in interest. This provision does not apply in this case because both accounts were business accounts and were used solely for business purposes.

charges had been made through September 2011. Further, AMEX requested an opportunity to present evidence that Debtor was jointly liable on the LOC Account as early as May 2006 and on the Blue Account as early as May 2007. At a hearing held on November 10, 2015, the motion for reconsideration was granted, and a hearing was scheduled to be held on December 8, 2015 on the merits of the objections to claims. At the close of the hearing, the matter was taken under advisement.[2]

## II. Factual Findings

On or about October 20, 1997, Debtor submitted an application to AMEX on behalf of Lewistown Center for a line of credit. At the time he submitted the application Debtor was the president and sole shareholder of the business. When the application was granted, Lewistown Center was the named holder of the account, but Debtor's name individually was also listed on billing statements. In 2000, Debtor opened a credit card account, the Blue Account, for use by the business.

At the hearing on this matter, the records custodian for AMEX testified that the company's records retention policy was such that original account applications and account agreements for the LOC Account and the Blue Account no longer existed. The custodian testified as to the process followed by small businesses when they apply for an account, including how AMEX notifies borrowers of the terms of these accounts. He further testified that to qualify for a small business account, a business owner must provide a personal credit history.

---

[2] This Court has jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This non-*Stern* matter is core pursuant to 28 U.S.C. §157(b)(2)(B). This Opinion and Order constitutes the findings of fact and conclusions of law made pursuant to Fed. R. Bankr. P. 7052 made applicable to contested matters by Fed. R. Bankr. P. 9014.

The oldest documents AMEX was able to produce were the amended account agreement for the LOC Account issued in May 2006 and the May 2007 amended account agreement for the Blue Account. It was the practice of AMEX to unilaterally amend the agreements from time to time and to notify Debtor that future extensions of credit would be subject to the revised terms. Each new amendment replaced the earlier one. The May 2006 amendment to the LOC Account agreement includes the following provision:

> This document and the accompanying supplement(s) constitute your Agreement. Please read and keep this Agreement. Abide by its terms. When you keep, sign or use the [LOC Account] card and personalized checks issued to you . . ., you agree to the terms of this Agreement. The words "you," "your," "yours" and "Cardmember" mean the individual authorizing officer of the Company who has requested the opening of the Account and/or, where applicable, the Company.
>
> . . .
>
> **Promise to Pay**
> You and the Company promise to pay all Charges on your Account.

AMEX also introduced an account agreement from 2011, which the custodian testified would have been sent to Debtor, containing the following revised language:

> Except as provided below, Basic Cardmember means the person who applied for this Account or to whom we address billing statements. Company means the business for which the Account is established. You and your mean the Basic Cardmember and the Company. You agree, jointly and severally, to be bound by the terms of this Agreement.

The language describing joint and several liability does not appear in the May 2006 amendment to the LOC Account. The records custodian testified that he believed that business owners were jointly liable on small business accounts when he became employed by AMEX in 1998, but that he had no personal knowledge about the Lewistown Center LOC Account.

The oldest available amended agreement for the Blue Account dated May 2007 includes the following description of obligations under the account agreement:

> This document and the accompanying supplement(s) constitute your Agreement. Please read and keep this Agreement. Abide by its terms. When you keep, sign or use the [Blue Account] Card issued to you . . . , or you use the account associated with this Agreement, . . . you agree to the terms of this Agreement. The words "you," "your," "yours" and "Cardmember" mean the person named on the [Blue Account] Card and/or, where applicable, the Company. You have received the [Blue Account] Card at the request of the Company for use in connection with the Card Account. You will be called a "Business Cardmember" or "Additional Cardmember." The "Basic Cardmember" is the authorizing officer of the Company who has authorized us to issue the [Blue Account] Card to you by signing the Company's application for the Card Account. The term "Company" means the company, corporation or firm in whose name the Card Account is established. The Company, Basic Cardmember, and Additional Cardmembers agree both jointly and individually to be bound by the terms of this Agreement.

Under the section entitled "Promise to Pay," the account agreement provides: "You agree to pay all Charges, including Charges incurred by Additional Cardmembers on your account."

AMEX also introduced an account agreement from 2011 for the Blue Account, which contained revised language similar to the revised language sent to Debtor for the LOC Account. It provides that:

> Except as provided below [regarding Additional Cardmembers], **Basic Cardmember** means the person who applied for this Account or to whom we address billing statments. **Company** means the business for which the Account is established. You and your mean the **Basic Cardmember** and the **Company**. You agree, jointly and severally, to be bound by the terms of this Agreement. (Bold in the original.)

Lewistown Center used the AMEX card issued under the Blue Account incurring charges and fees in the total amount of $663.02 after May 2007. Under the terms of the amended credit agreements, both accounts were governed by Utah law.

Debtor testified that both the LOC Account and the Blue Account were only used for business purposes and that he did not recall signing any documents that would make him

5

personally liable for the amounts due on either account. He stated that he did not recall receiving the amended agreements.

## II. Discussion

The first issue I must address is whether the proofs of claims filed by AMEX are entitled to prima facie validity in the absence of the writing creating the obligation. If they are not entitled to prima facie validity, then the next issue is whether AMEX has borne its burden of proving the validity of its claims against Debtor in any amount.

*A. Are Claims #3 and #9 prima facie evidence of the validity and amounts of the claims?*

The burden of proof for claims filed under the Bankruptcy Code "rests on different parties at different times." *In re Allegheny Int'l Inc.*, 954 F.2d 167, 173 (3d Cir. 1992). The initial burden is on the claimant to allege sufficient facts to support the claim. If this burden is met, the claim is prima facie evidence of its validity. *Id*. Fed. R. Bankr.P. 3001(c)(1) states that "[w]hen a claim . . . is based on a writing, the original or a duplicate shall be filed with the proof of claim. If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim." If a proof of claim is executed and filed in accordance with Rule 3001, it is prima facie evidence of the validity and amount of the claim. Fed R. Bankr. P. 3001(f). If the claim is not facially valid, the burden then remains on the claimant to establish by a preponderance of the evidence the necessary facts to support legal liability on the claim.

Despite the language of Rule 3001(c)(1), 11 U.S.C. § 502(b), which provides an exhaustive list of reasons for sustaining an objection to a proof of claim, does not specify that non-compliance with Rule 3001 supports denial of the claim. *Frontier Ins. Co., v. Westport Ins. Corp.* (*In re Black, Davis and Shue Agency, Inc.*), 460 B.R. 407, 416 (Bankr. M.D. Pa. 2011).

Case 1:14-bk-03779-RNO    Doc 120    Filed 03/22/16    Entered 03/23/16 08:47:46    Desc
Main Document      Page 6 of 10

Accordingly, a majority of courts have held that an objection stating that a claim lacks adequate documentation does not support disallowance of a claim under § 502(b). *See Dove–Nation v. eCast Settlement Corp.,* 318 B.R. 147, 150 (B.A.P. 8th Cir. 2004); *In re Moreno,* 341 B.R. 813, 816 (Bankr. S.D. Fla. 2006); *In re Burkett,* 329 B.R. 820, 826 (Bankr. S.D. Ohio 2005); *In re Shank*, 315 B.R. 799, 810 (Bankr. N.D. Ga. 2004). Nonetheless, "[i]f a creditor fails to attach sufficient supporting documentation to a proof of claim, the *prima facie* validity of the claim under Rule 3001(f) will be lost." *Black, Davis and Shue*, 460 B.R. at 416. *Accord In re Heath,* 331 B.R. 424, 433 (9th Cir. BAP 2005)*; Dove–Nation,* 318 B.R. at 152; *Rogers v. B-Real, LLC (In re Rogers),* 391 B.R. 317, 322 (Bankr. M.D. La. 2008); *In re Kincaid,* 388 B.R. 610, 613–14 (Bankr. E.D. Pa. 2008); *Moreno,* 341 B.R. at 817; *Shank,* 315 B.R. at 810.

In the matter before me, AMEX filed two proofs of claim for two business credit card accounts held by Lewistown Center but did not include the original credit card applications or agreements.[3] Nonetheless, AMEX contends that those original documents made Debtor jointly and severally liable with Lewistown Center for charges to the accounts. Debtor does not contest the creation of the accounts and the amount of the debt incurred. These claims have been allowed in the Lewistown Center case. He does, however, contest his personal liability for the claims.

---

[3] AMEX did include certain supporting documents with both Claims #3 (for the LOC Account) and #9 (for the Blue Account). The Blue Account claim included a monthly Statement for July 2014 which showed a balance of $4174.06. The last page of the claim showed the date the account was opened (June 7, 2000) the charge off date (June 2014) the last payment date (January 2014) and the last transaction date (October 2012). None of these documents was the writing on which the claim was based (i.e. the original application or account agreement).
Similarly, the proof of claim for the LOC Account included only one account statement (from April 2014) showing a balance of $24,699.39. The last page of the claim showed the date the account was opened (October 20, 1997), the charge off date (June 2013), the last payment date (February 2014) and the last transaction date (April 2008). Again, none of these documents was the writing on which the claim was based.

Without evidence of the content of those original "writings," I am unable to find that the proofs of claim meet the requirements of Fed. R. Bankr. P. 3001(c)(1) and, therefore, they do not constitute prima facie evidence of Debtor's personal liability for the debts.

*B. Sufficiency of evidence offered to support Debtor's personal liability on the claims*

To satisfy its burden at trial, AMEX introduced into evidence several documents for each account that included affidavits, card agreement amendments, and several monthly account statements. AMEX also offered the testimony of its records custodian regarding the documents.

Corporate officers generally are not held personally liable for corporate debts. *See In re Gonzales*, 410 B.R. 868, 875 (Bankr. D. Ariz. 2009) (claim objection sustained where evidence established that principal signed AMEX business card application on behalf of LLC without intent to bind himself personally); *In re Fairfield*, 455 B.R. 849, 854 (Bankr. E.D. Pa. 2011) (corporate officer not liable for corporate debt unless the officer expressly assumes liability). However, under Utah law, an unsigned credit agreement is enforceable against a debtor if a copy of the agreement is provided to the debtor, the agreement specifically provides that any use of the card constitutes acceptance of its terms, and the debtor thereafter uses the card. *Gonzales*, 410 B.R. at 875(citing Utah Code § 25-5-4(2)(e)); *see also Am. Express Co. v. Zaman*, P.C. 07-1690, 2010 WL 2258920, *3 (R.I. Super. May 28, 2010) (Trial Order) (principal liable for corporate credit charges when agreement provided that principal and company were "jointly and individually bound by the terms" of the agreement, agreement was mailed to corporate address and credit charges were incurred thereafter).

As observed by Judge Coleman in the *Fairfield* decision, several jurisdictions have held that an individual may be held responsible for charges on a business credit card used for business

8

purposes if the agreement includes language extending liability to the individual. *Fairfield*, 455 B.R. at 854 (citing *Heiges v. JP Morgan Chase Bank, N.A.* 521 F.Supp 2d 641, 647 (N.D. Ohio 2007)). In this case, the language in the amended agreements for the two accounts differs in significant ways. The LOC Account was established in 1997, but the earliest document that establishes the terms of the parties' agreement is dated May 2006. There is no evidence of the terms at the creation of the account other than the custodian's bald statement that he believed that the general terms for these types of accounts did not change between 1997 and 2011. This representation is insufficient to meet AMEX's burden under Rule 3001.

The May 2006 amendment states that "*you* (the Debtor) and *your* Company promise to pay all Charges on your account." (Italics in the original.) I find this language to be ambiguous. This statement could be interpreted to mean that Debtor had a responsibility to ensure that corporate obligations were satisfied. But it also could be interpreted to mean that Debtor was personally liable for charges on the corporate account. "[T]he language of an ambiguous instrument should be construed most strictly against the party who drafted the instrument." *Fairfield*, 455 B.R. at 874 (quoting *Matter of Orris' Estate*, 622 P.2d 337, 339 (Utah 1980)). Applying this principle, I find that the 2006 amendment to the LOC Account did not make Debtor personally liable for new charges on the account.

The 2011 agreement presented in evidence did make Debtor personally liable for loans made through the account. The 2011 agreement states: "You and your mean the Basic Cardmember and the Company. You agree, jointly and severally, to be bound by the terms of this Agreement." Therefore, beginning in June 2011, Debtor was personally liable for credit extended through the LOC Account. The documents submitted in support of the proof of claim, however,

9

indicate that no new draws on the line were made after 2009. Accordingly, Debtor is personally liable on the LOC Account for no amount.

As set forth in the Factual Findings, the original documents for the Blue Account no longer exist. The earliest amended account agreement submitted in evidence was for May 2007. The language in this agreement provides: "The Company, Basic Cardmember, and Additional Cardmembers agree both jointly and individually to be bound by the terms of this Agreement." I find this language sufficient to make Debtor personally liable for charges made on the Blue Account. After May 2007, Debtor accumulated charges and fees on the Blue Account in a total amount of $663.02. Therefore, AMEX's proof of claim #9 will be allowed in an amount of $663.02.[4]

An appropriate Order will be entered.

By the Court,

_Mary D. France_
Chief Bankruptcy Judge

Date: March 22, 2016

---

[4]The monthly statements submitted in support of the proof of claim included interest charges on the outstanding balance of the account, which accrued from the date the account was opened. Because AMEX did not prove that Debtor was personally liable on the account from date the account was created, Debtor would be potentially liable for interest charges only on amounts borrowed since May 2006. I was unable to ascertain the correct amount of interest from the documents submitted in evidence.

Case 1:14-bk-03779-RNO    Doc 120    Filed 03/22/16    Entered 03/23/16 08:47:46    Desc
Main Document      Page 10 of 10